**BROCK v MARLATT, Admrx**

Ohio Appeals, 3rd Dist, Mercer Co

No 439.   Decided Oct 3, 1933

Hoke & Wright, Van Wert, Ballard, Jones & Hensel, Columbus, for plaintiff in error.

Frank L. Kloeb, Celina, and B. A. Myers, Celina, for defendant in error.

## OPINION

By GUERNSEY, J.

Under the statute, and the rules of practice of this court, the errors pointed out in the brief will be the only ones considered, and they will be considered in the order mentioned.

In our opinion there were no irregularities in the voir dire examination and such examination was within the rule laid down in the case of **Pavilonis v Valentine, 120 Oh St 54,** and fully justified by the provisions of §§11437 **and 11438 GC.** See **Slosser v Lagorin, 185 NE 210** (14 Abs 302), recently decided by this court, certification of which was refused by the Supreme Court.

While the defendant suggests error in the submission of Request Number 2 of plaintiff, the record shows that this request was withdrawn by plaintiff.

Plaintiff's Request Number 3 does not contain the exception provided in the third proposition of the syllabus of the case of **Valentine v Pavilonis, 27 Oh Ap 26, (6 Abs 359; 6 Abs 462),** but this exception is set forth in Plaintiff's Request Number 8 which was given, and these requests read together correctly state the law, and the omission of the exception from Request Number 3 was therefore not prejudicial error.

It is suggested in defendant's brief that plaintiff's special charges numbers 4, 5, 7, 9, and 10, to which exceptions were noted, are subject to criticism because they are mere abstract propositions of law and do not take into consideration the necessary element of due care on the part of the decedent. We have carefully examined these charges and are of the opinion that all of the charges state propositions of law applicable to the facts of the case and that in charges numbers 5, 7, 9 and 10 such propositions of law are correctly stated.

We are also of the opinion that it was not necessary, as a part of plaintiff's special charge number 4, to require the jury to consider the element of due care on the part of the decedent. We are further of the opinion that any error in this charge, taking into consideration the general charge and the facts of this case, was not prejudicial to the defendant.

Plaintiff's Requests Numbers 11 and 12 relate to the application of the doctrine of "last clear chance." The defendant contends that the giving of these requests was prejudicial error, for the following reasons:

First. That no facts were pleaded which would warrant the application of this doctrine.

Second. That the facts in evidence did not warrant the application of this doctrine.

Third. That the charges as given, incorrectly stated the law with reference to "last clear chance."

In order to determine whether the contentions of the defendant are well grounded, it will be necessary for us to consider the origin and application of the rule of "last clear chance" and its relation to wanton negligence as a basis for recovery.

It is generally conceded that the rule of "last clear chance" originated from the decision of the case of Davies v Mann, 10 Meeson and Welsby, 545. This decision was first applied by the Supreme Court of this state, in the case of **Kerwhacker v C. C. C. & C. R. R. Co., 3 Oh St, page 172.** At page 194 of the opinion, the court quotes from the decision in that case, as follows:

"The plaintiff having fettered the fore feet of an ass belonging to him, turned it into a public highway; and at the time in question, the ass was grazing on the off side of a road about eight yards wide, when the defendant's wagon, with a team of three horses, coming down a slight descent, at what the witness termed 'a smartish pace', ran against the ass, knocked it down, and the wheels passing over it, it died soon after. The ass was fettered at the time, and it was proved that the driver of the wagon was some little distance behind the horses. The learned judge, (Erskine, before whom the case was tried at the Worcester assizes) told the jury that 'though the act of the plaintiff in leaving the donkey on the highway, so fettered as to prevent his get-

ting out of the way of carriages traveling along it, might be illegal; still, if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable against the defendant;' and his Lordship directed them, if they thought the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff."

And on page 195 of the opinion, the court, further commenting on this case, says:

"After a verdict for the plaintiff, on a motion for a new trial, which came before the Exchequer, Lord Abinger said: 'I am of opinion that there ought to be no rule in this case. The defendant has not denied that the ass was lawfully in the highway, and therefore we must assume it to have been lawfully there. But even were it otherwise, it would have made no difference; for, as the defendant might, by the exercise of proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there'."

The court in determining the effect of this decision, at page 196 of the opinion lays down the following rule:

"When the negligence of a defendant in a suit upon 'such ground of action, is the **proximate** cause of the injury, but that of the plaintiff only 'remote, consisting of some act or omission, not occurring at the time of the injury, the action for reparation is maintainable."

It will be noted that the decision in the case of Davies v Mann was based on the question of proximate cause and that the case was cited as a case of proximate cause by the Supreme Court in the Kirwhacker case.

From this case in the 3 **Oh St,** two lines of cases developed. One line relating to the rule of last chance and the other to the rule of wanton negligence, although in some of the cases there is no clear line of demarkation.

The case of **Railroad Company v Kassen, 49 Oh St, page 230,** is the next case in which the question is considered by the Supreme Court and the decision in this case is the basis of the doctrine of "last clear chance" in its present form. The court bases its decision in this case on the rule laid down in the Kerwhacker case above mentioned.

The question is next considered by the Supreme Court in the case of **Krause v Morgan, 53 Oh St, 26,** and on page 37 of the opinion the court comments on the Mann case and the Kassen case, and cites them as authority for the rule that:

"In order to constitute contributory negligence on the part of the plaintiff, there must be negligence on the part of the defendant. It is accordingly the well settled rule that when the defendant's conduct amounts to wilfulness, and when the mischief is occasioned by his intentional and wanton wrong doing, the plaintiff's negligence is no defense."

While neither the Kerwhacker-Mann, nor the Kassan cases are specifically referred to in the case of **Higbee v Jackson, 101 Oh St 75,** a rule in harmony with those decisions is set forth in the third proposition of the syllabus.

"To constitute wanton negligence it is not necessary that there should be ill will toward the person injured, but an entire absence of the care for the safety of others, which exhibits indifference to consequences, established legal wantonness. Such a mental attitude distinguishes wrongs caused by wanton negligence from torts arising from mere negligence."

In the case of **Payne, Director General of Railroads v Vance, 103 Oh St 59,** at pages **75 and 76** of the opinion the court cites with approval the cases of Railroad Company v Kassen, Higbee Company v Jackson, and Krause v Morgan above referred to, and based on these cases, in the third and fourth propositions of the syllabus holds:

"3. Wilful tort involves the element of malice or ill will, but it is not necessary to show actual malice or ill will. It may be shown by indifference to the safety of others after knowledge of their danger, or failure after such knowledge to use ordinary care to avoid injury."

"4. When defendant's conduct amounts to wilfulness, and when injury is occasioned by his conscious wrongdoing the plaintiff's negligence is no defense."

The case of **Steubenville & Wheeling Traction Company v Brandon, Admr., 87 Oh St 187,** cited by plaintiff in her brief is a case apparently based on the doctrine of "last clear chance" but such rule is not mentioned in the syllabus. However, the opinion

is to the effect that where it is alleged in the petition that the defendant carelessly, negligently and recklessly failed to exercise ordinary care after discovery of plaintiff's peril in time to have avoided a collision, and the evidence tends to support such allegation, it was proper to submit the case to the jury.

In the case of **West, Receiver v Gillete, Admr.,** 95 Oh St 305, the court, in its opinion at page 310, quotes, with approval from the case of **Railroad Company v Kassen,** 49 Oh St, 230, and at page 312 approved the decision in the case of Steubenville & Wheeling Traction Company v Brandon, Admr., above mentioned, and based on these decisions approves a charge on the doctrine of "last clear chance."

The first proposition of the syllabus of the case of **Pennsylvania Company v Hart,** 101 Oh St 196, is to the effect:

"It is error for the trial court in his charge to the jury to charge the doctrine of 'last clear chance' where there is no evidence tending to prove a state of facts bringing the case within the rule."

And Judge Robinson, in his opinion in this case, at page 200 says:

"For the defendant in error to have brought himself within the rule and to have entitled himself to a charge of the court upon the subject, the evidence must have tended to show that while his negligence may have contributed toward getting him in the position of danger, all negligence on his part had ceased for a sufficient time prior to the accident to have enabled the plaintiff in error, after it knew of his situation of peril to have avoided the accident."

The latest decision of the Supreme Court on the subject of "last clear chance" is found in the Ohio Law Bulletin and Reporter, at page 291, in the case of Cleveland Railway Company v Masterson, and in the opinion and dissenting opinion in this case the principal Ohio cases on the subject are discussed. The first, second and fourth propositions of the syllabus in that case are as follows:

"1. Where a plaintiff, by his own fault, has caused himself to be placed in a perilous situation, he may recover under the rule of the 'last clear chance', notwithstanding his negligence, if the defendant did not, after becoming aware of plaintiff's perilous situation, exercise ordinary care to avoid injuring him."

"2. If recovery is predicated upon a state of facts invoking that rule, an instruction by the court, to the effect that if the plaintiff was guilty of such negligence his negligence would not preclude recovery, if the defendant failed to use ordinary care 'after he saw or in the exercise of ordinary care should have seen' the plaintiff in a dangerous situation, is erroneous. The rule in Ohio requires the defendant to use due care after knowledge of plaintiff's peril. (**Erie Rd. Co. v McCormick,** 69 Oh St, 45, approved and followed; the first proposition in the syllabus in **Railroad Co. v Kassen,** 49 Oh St, 230, disapproved.)"

"4. A plaintiff may, in his petition, plead a case of ordinary negligence and may also plead a state of facts invoking the last chance rule; and he may recover under whichever aspect the proof in the case assumes."

It will be noted that in this case the court adopts practically the same rule with reference to recovery under the doctrine of last clear chance as it had previously adopted for recovery for wanton negligence, in that it must affirmatively appear from the pleadings and the evidence that the defendant had actual knowledge of plaintiff's peril in time to have avoided the injury by the exercise of ordinary care. And from an examination and comparison of the cases involving "last clear chance" and the cases based on "wanton negligence" it will be seen that the basis of recovery in both classes of cases is the same. 20 R.C.L., page 145.

It will also be noted that a plaintiff may in his petition plead a case of ordinary negligence and also plead a state of facts involving the last chance rule; and he may recover under whichever aspect the proof in the case assumes.

The case of **Masters, Admr. v Von Lehmden,** 36 Oh Ap, 414 (8 Abs 441), presents a state of facts somewhat similar to the case at bar, and in that case it was held that the failure of the court to charge on wilful and wanton negligence, at the request of the plaintiff, was prejudicial error. We quote from the opinion at pages 415 and 416, as follows:

"There are several specifications of error, but the only important point of error presented in the record is the complaint that the court failed to charge on wilful and wanton negligence, although such charge was requested by the plaintiff, and was one of the issues in the case made by the pleadings.

"The trial court charged fully on the doctrine of last clear chance, which, under the facts of the case, is a doubtful issue.

"It appears from the record that plaintiff's decedent, a workingman at a foundry, in company with two other men, at the close of their work, started across Colerain Avenue, at a place other than a designated crossing. They had reached the middle of the street, and were on what is known as the devil's strip between two lines of tracks of the street railway company. They had paused there for some reason, probably to await the passing of vehicles, or a street car, going in the opposite direction. It was plain daylight, and which in this position the defendants' truck, driven by an employee, came down the street at a 'terrific rate of speed,' estimated by a witness at forty to fifty miles an hour, and the reasonable inference from the evidence is that he was headed directly toward these men in the middle of the street. The driver states he saw the men when he was 75 to 100 feet away. It appears that the three men realized their dangerous situation with reference to the rapidly approaching truck. Two of the men stepped forward and decedent stepped backward. When too late to accomplish the purpose, it seems that the driver of the truck undertook to turn out to avoid hitting the men, but struck Masters, killing him.

"We are of opinion that these facts presented a question for the jury of wilful and wanton negligence, within the meaning of that phrase, as defined in the cases of **Higbee Co. v Jackson, 101 Oh St 75, 128 NE 61,** 14 A.L.R., 131, and **Payne, Dir. Genl. of Rds. v Vance, 103 Oh St 59, 133 NE 85.**

"The trial judge in refusing to charge on wilful and wanton negligence conceived the idea, as indicated by his memorandum, that in charging on the last clear chance doctrine he had made an easier case for the plaintiff administratrix than had he placed the burden of proving wilful and wanton negligence on her. When we consider that under the decision in the case of **Schell v De Bois, Admr., 94 Oh St, 93, 113 NE 664,** L.R.A. 1917A, 710, the violation of an ordinance is negligence per se, it follows that the deceased was continuously negligent per se until struck by the defendants' machine, and, therefore, continuously guilty of contributory negligence. The only basis of recovery in this action, under the law and the facts, would be on the ground of wilful and wanton negligence against which contributory negligence is not a defense."

From a review of the above cases it would appear that in any case where wanton negligence is pleaded, and facts tending to show wanton negligence are in evidence, it is not error for the court, at the request of the plaintiff, to submit to the jury a charge under the doctrine of "last chance" as, insofar as the defendant is concerned, his liability under the doctrine of last chance is comprehended in his liability for wanton negligence. And, as a matter of fact, a charge upon the doctrine of last chance, where facts warranting a charge on wanton negligence are in evidence, is more favorable to the defendant than a charge of wanton negligence, as the plaintiff in the charge under the doctrine of last chance assumes the burden of admitting himself to be negligent, which he is not required to assume under a charge of wanton negligence.

In the case of **Drown v Northern Ohio Traction Company, 76 Oh St at page 234,** it is held in the third proposition of the syllabus, on page 235, that:

"Since the plaintiff can recover only upon the allegations of his petition, he cannot recover upon negligence which warrants the application of the rule of 'last chance' without alleging it in his petition."

However, in this case as in other cases in which the same rule is approved, the court found that the plaintiff had been negligent, and that his negligence had continued, and, concurrently with the negligence of the defendant, had directly contributed to produce the injury, or, in other words, that the defendant had been guilty of contributory negligence as a matter of law which barred his recovery, and which would preclude any application of the doctrine of last chance. And we have found no case in which this rule was invoked where the facts admitted in evidence without objection and without limitation or restriction, warranted the application of the doctrine.

In **Hoffman v Gordon, 15 Oh St 211,** Judge Welch, speaking for the Supreme Court of Ohio, said:

"The evident object of the code is to vest in the court a discretion, where it can be done without surprise or injury to try the case upon the evidence, outside of the pleadings, and if objection be made, to allow the pleadings to be conformed to the evidence, at once and without terms."

In the case of **Allen et v J. H. Sewell et**, 9 O.F.D. page 508, the United States Court of Appeals for the Sixth Circuit, following the above case, held in the first proposition of the syllabus:

"Under the Code of Ohio where evidence admitted clearly raises an issue not made by the pleadings, the parties have the right to have such issue submitted to the jury. If objection is made to the form of the pleadings, an amendment will be permitted, but if no amendment is requested, then the parties must be considered as having waived objection to the pleadings."

And in the fourth proposition of the syllabus in the case of Wabash Ry. Co. v Beez, in the same court, 36 Federal Reporter (2nd Series) at page 480, it is held:

"Reversal cannot be predicated on action of court in conforming charge to proofs, rather than strictly limiting it to pleadings, in absence of action specifically calling alleged variance to attention of court, in view of latitude of amendment permitted by §11363 GC."

In the last mentioned decision the court refers only to §11363, GC, but there are two other sections which are also applicable, §§11364 and 11556 GC. §11364 GC provides in part:

"In every stage of an action, the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed, or affected, by reason of such error or defect."

Sec 11556 GC provides:
"No variance between the allegation in a pleading, and the proof, shall be deemed material, unless it has actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits. When it is alleged that a party has been so misled, the fact must be proved to the satisfaction of the court. It also must be shown in what respect he has been misled. Thereupon the court may order the pleading to be amended, upon such terms as are just."

We have not found any Ohio decision directly holding that wanton negligence must be pleaded in order to justify a recovery for such negligence, although we have found authority to the effect that it is error to

require a plaintiff pleading both ordinary negligence and wanton negligence, to elect between the charge of negligence and that of wantonness. **Jurrus v T. F. & F. Elec. Ry. Co., 124 Oh St 251;** and that where in an action for damages for personal injury, the petition alleges that the act was done wilfully, while the evidence tends only to show that it was done negligently, under our code and the construction put upon it by the courts and the provision of the statute that it should be construed liberally, the case should be submitted to the jury on the question of negligence. 21 O.C.C. page 547. Under these holdings wanton negligence would appear to be only a degree of negligence.

We are, however, of the opinion, and so hold, that in a case in which ordinary negligence is pleaded in the petition, and on the trial of the case evidence is admitted without objection and without restriction, tending to show the existence of a state of facts warranting a recovery for wanton negligence and/or under the doctrine of last chance, it is not prejudicial error for the court to charge the jury on such subjects.

Another doctrine that should be considered in connection with the case at bar, is the rule of "imminent peril." The rule is mentioned in the opinion in the Kerwhacker case, above mentioned, at page 191, and the court quotes from the opinion of Chaplin v Hawes et, 3 Carr. & Payne 554, as follows:

"If the plaintiff's servant had such a clear space, that he might easily have got away, then, I think, he would have been so much to blame, as to prevent the plaintiff's recovering. But, on the sudden, a man may not be sufficiently self-possessed to know in what way to decide; and in such a case, I think the wrong-doer is the party who is to be answerable for the mischief, though it might have been prevented by the other party's acting differently."

It is stated in 4 **Ohio Jurisprudence,** 640, that:
"It is a familiar principle of the law of negligence that while an individual is bound to take active measures to preserve himself from impending harm, he is by no means held to the same judgment and activity under all circumstances. The opportunity to think and act must be taken into consideration. And although he may not have taken the safest course or acted with the best judgment or greatest prudence he may yet recover for injuries sustained if he can show

that he was required to act suddenly or in an emergency without opportunity for deliberation. This principle has been invoked in behalf of pedestrians in situations of imminent danger."

In connection with the facts in this case, it is also necessary to consider the rights of workmen on public highways.

In Huddy on Automobiles, Seventh Edition, at page 596, it is stated that:

"Laborers whose employment requires that they work in the streets are not considered in the same light as pedestrians. * * * Pedestrians are not continuously in the street and their attention is devoted to the safe passage along the highway, while the attention of street laborers must be, to a considerable extent, at least, devoted to their tasks. There can be no duty imposed on a workman to be constantly on the lookout for motor vehicles; on the contrary it is the duty of drivers of vehicles to observe the street laborers and to avoid contact with them.

"It is not negligence as a matter of law for a workman to keep his eyes on his work and to fail to look and listen for approaching vehicles, if he remains in one spot. And a laborer may properly assume that the automobilist will not be guilty of negligence in running him down without warning. * * *

"Persons riding or driving are bound to exercise reasonable care to see and avoid injuring persons who are at work in the streets, as well as pedestrians. And the laborer is not bound to neglect his occupation, in order to avoid injury from the want of ordinary care on the part of drivers of vehicles."

In Berry on Automobiles, Fourth Edition, page 475, it is stated that:

"Persons using the streets as travelers are bound to use reasonable care not to injure one who is rightfully working in the street."

And it would seem, on principle, that a workman tethered in a highway by his work, would be entitled to have the same degree of care exercised toward him by the driver of a vehicle on the highway as the ass tethered in the highway was held to be entitled in the Mann case.

Included in the testimony of the defendant as to the accident, at pages 212 and 213 of the bill of exceptions, was the following:

"A. As I came to the corporation limit I saw a truck coming from the east, that was on the square west of Godfrey Avenue; there was another car following immediately behind the truck and it pulled out as if to come around the truck but it did not come on around, when it pulled out into the middle of the road I slowed my car down for fear of meeting this car, but it turned north on a little street two squares west of Godfrey Ave., so the truck went on, and after it passed on I noticed the other truck east parked on the north side of the road, and as I approached Godfrey Avenue, I was about half way possibly, I saw two men, one man start across the road first, just one man started first with the broom sweeping out the seam crossings across the road. He did not look up, did not look right or left, started to sweeping. Mr. Marlatt, I did not know Mr. Marlatt, then another man started across walking behind him, he did not look up, he did not look either direction. Just when I got to Godfrey Avenue I sounded the horn twice. Mr. Howell just glanced up and then resumed his sweeping, went on across the road. Mr. Marlatt stopped and faced us and he watched us until I was about two lengths and a half or better of the car west of him, then he turned and started on south. When he started south I was going so slow at that time I could have stopped my car there. I did not think it was necessary, when he turned I thought I had the right to go on. Q. Proceed. A. So I shifted my gear into low. I always use the three shifts. And, I looked then to see if there was any traffic coming from either direction or anybody on the north side of the road. I pulled to the north side and Mr. Marlatt he jumped backward into the path of my car. The right side of the bumper struck his right leg and knocked him off his feet and he threw up his hands and fell backward against the lamp, and from the hood on down to the pavement I did not see him. I did not see him strike the pavement, I could not see him, I stopped my car as quick as I could get my foot on the brake. I killed the engine; then I started my car up again and moved up almost to where the 'men working' sign was placed, then I stopped, the left wheels were off the pavement on the north side."

The defendant also testified, as shown on page 221 of the bill of exceptions, as follows:

"Q. Didn't you say you could have stopped your car? A. I said before I turned

to the north, I could stop my car. My car was going so slow when Mr. Marlatt turned and started to go on south that I felt I had the privilege to go on. Q. You were exercising your privilege? A. Yes sir, and my rights."

On page 55 of the bill of exceptions as follows:
"Q. Now you seen him before you hit him? A. Yes sir. Q. And he was looking toward you, wasn't he? A. Yes sir. Q. Well, you seen him before you hit him as you have already testified that he was on the north side of the road? A. No, before I hit him he was on the south side of the road."

The defendant also testified that she was aware at the time she approached plaintiff's decedent in her automobile, that the plaintiff's decedent was in the company of state highway employees working on the highway, and there is evidence to the effect that decedent was sweeping the highway when struck.

Leo Rolfs, a fellow employee, testified the paved portion of the highway was sixteen feet wide and that he was about five feet from decedent immediately before decedent was struck, and that he, Rolfs, jumped back. And Henry Miller, another fellow employee, testified that the car was almost upon him before he saw it. And both testified that no warning was given of the approach of the car. One of the other witnesses testified that the plaintiff's decedent was thrown a distance of from ten to twelve feet, and another, fifteen to twenty feet, when defendant's car struck him. The undisputed testimony was to the effect that the collision happened about noon in full daylight.

It will be noted that the defendant's testimony is to the effect that she was about two lengths and a half or better of the car, west of plaintiff's decedent when he turned and started south, and that she was going so slow at the time, that she could have stopped her car there, and that she saw the plaintiff's decedent in the company of men whom she knew to be employees of the State Highway Department working on said highway. It is also to the effect that plaintiff's decedent, at the time she turned to the north side of the highway two and one half car lengths or better from the decedent, was south of the center of the road, but that he jumped back from his position as she drove on the north side

of the road, and was struck by her car north of the center of the road.

If the defendant was driving her car at the slow rate of speed to which she testified, the decedent would, after he started south, have had ample time to get entirely across the road before the defendant in her automobile passed that portion of the road on which plaintiff's decedent had been standing at the time he turned south. But, under the defendant's own testimony, plaintiff's decedent at that time was so close to the center of the road that a backward jump placed him in front of her automobile north of the center of the road. It is therefore a fair inference from defendant's own testimony, that plaintiff's decedent did not start south, as testified by her, but remained in the same position as he was when she was two and a half car lengths from him, or that she was traveling at a much greater rate of speed than she testified, and that she drove almost directly toward him.

The testimony of the other witness to the effect that the decedent was thrown a distance of from ten to twenty feet by the force of the collision, would also indicate that the defendant was traveling at a much greater rate of speed than testified by her, and the fact that at least two men were in the highway almost directly in the path of the car, indicates the peril of the situation. The testimony of the defendant as to decedent jumping backward in front of her automobile, is corroborated by the witness Howell, but other witnesses testified to the effect that they first observed the decedent when he was dodging back and forth in front of defendant's car immediately before the collision. The testimony of the defendant that in the doing of the acts mentioned, she was exercising her privilege and right, shows clearly that her acts were conscious acts.

Under this testimony, it was the province of the jury to determine whether the peril of the decedent started at the time the defendant was two and a half car lengths or better from him and turned on the north side of the road, or started when the decedent jumped back or was immediately in front of defendant's car. And it could not be said as a matter of law that the act of the decedent in jumping backward in front of the car was the proximate cause of the collision. The jury may well have concluded from the evidence that the decedent was in a position of imminent peril and that he was not to be held to exercise that same care and circumspection that prudent per-

sons would exercise with no danger present, and that he could not be said to be guilty of contributory negligence if he failed to make the most judicious choice between hazards presented, or would have escaped injury if he had chosen to act differently.

We are of the opinion that the facts admitted in evidence without objection and without limitation, warranted a charge on wanton negligence and also under the rule of last clear chance. And this view is strengthened by the decision in 36 Ohio Appellate Reports, above mentioned. We are also of the opinion that it was not prejudicial error to submit the charges on last clear chance, under the circumstances although facts warranting the application of such doctrine were not pleaded.

The charges mentioned do not contain correct statements of the law insofar as they do not require the defendant to have actual knowledge of decedent's peril, but as the defendant herself testified she saw the decedent in the highway at such a distance that she could have stopped her car and avoided the collision, the charges in this respect were not prejudicial to the defendant.

In the case of **Toledo, Columbus & Ohio River Rd. Co. et v Miller, 108 Oh St 388,** a case in which a $75000 judgment was rendered by the trial court, charges were submitted to the jury based on the rule of last clear chance, and the court held that such charges under such rule were not warranted by the facts in evidence and were not correct statements of law, but affirmed the judgment under authority of §11364, GC, and upon the Court of Appeals certificate of substantial justice having been done.

We have determined that substantial justice has been done to the party complaining, as shown by the record in this case, and direct that certificate thereof be made in the entry.

For the reasons mentioned, the judgment of the lower court is affirmed.

KLINGER, J, concurs.
CROW, PJ, dissents.

### DISSENTING OPINION

By CROW, PJ.

That it is reversible error to submit an issue for determination by the jury, which is not raised by the pleadings or proof, is too well settled to need citation of authority, and in the instant case there is neither allegation nor evidence making the doctrine of last clear chance an issue, inasmuch as such evidence if any, as tended to show negligence on the part of the deceased, occurred concurrently with the negligence if any committed by defendant.

To make the doctrine of last clear chance available, the negligence of the injured person must have ceased, as a proximate cause.

Also, in my opinion, there was no evidence tending to prove either wanton or wilful negligence by defendant; indeed, the only tendency in the evidence, to prove negligence of defendant was the failure to use ordinary care in relation to the speed with which she operated the car she was driving as the deceased was proceeding out of the range of her driving; that is to say, if he had continued to walk in the southerly direction he was going as defendant drove easterly, he could not have been injured by her car, but for some reason which the proof wholly fails to show, he suddenly jumped backward into the path of and immediately in front of her car.

By both pleading and evidence the only negligence charged on the part of the defendant, was restricted to the want of ordinary care, which made prejudicially erroneous, the charge empowering the jury to apply the doctrine of last clear chance, or that of wanton or wilful negligence.

It was therefore prejudicial error, to charge the doctrine of last clear chance, and it would have been likewise prejudicially erroneous to have charged the doctrine of wanton or wilful negligence.

For error in charging the doctrine of last clear chance, the judgment should, in my opinion be reversed, and cause remanded for a new trial.